AMERICAN JUNIOR AIRCRAFT COM-
PANY, an Oregon corporation,
Plaintiff,

v.

L. M. COX MANUFACTURING CO., Inc.,
a California corporation, and Le Roy
M. Cox, Defendants.

Civ. A. No. 15889.

United States District Court
S. D. California, Central Division.

March 24, 1955.

R. W. Fulwider, Los Angeles, Cal., for plaintiff.

Lyon & Lyon, Los Angeles, Cal., for defendants.

JAMES M. CARTER, District Judge.

The court now decides the above entitled case, heretofore tried and submitted for decision.

The 2,292,416 Patent.

The court finds that the St. Clair plane, Exhibits A, A–1 and A–2 is prior in time to the alleged Walker invention and that it was in public use, and plans for it were on sale more than one year prior to the filing of Walker's application on December 26, 1940. The court finds that the St. Clair plane was made and used prior to the time that Walker conceived his alleged invention.

Every element of each claim of the 2,-292,416 patent is present in the St. Clair plane, except that St. Clair used a lever on the wings and 2,292,416 patent calls for a guide ring or rings. The lever is the full mechanical equivalent of the guide rings and the substitution of this equivalent by Walker would not void infringement had the St. Clair plane been patented. The lever on the St. Clair plane and the guides on the Walker devices have the function of giving lateral stability.

In the Walker devices, the wires pass through the guide and have a device for the attaching of the tether line. Thus, there is a continuous line with a joint in it between the plane and the holder of the tether line. In St. Clair the lines are attached to the lever, which is the equivalent of the joint and there is a continuous line from the holder of the tether to the plane.

The fact that plaintiff contends and argues that in 1946 and 1947 it placed a construction on its patent which would place the St. Clair structure beyond the scope of the 2,292,416 patent, even if true, is immaterial to the issues at bar.

The 2,292,416 patent is further invalid for lack of invention over Sampson 2,-061,953, in view of the St. Clair plane. Sampson taught the use of a pair of continuous flexible lines running to the bell crank in the fuselage to operate a push rod attached to the horn of the elevator. Had Sampson guided his lines through guides on the left wing, his patent would have contained every element in 2,292,416. St. Clair supplied the missing element. It would not be invention for a man reasonably skilled in the art, to have combined Sampson and

St. Clair as was done by Walker in patent 2,292,416.

The court further believes the testimony in the depositions of Mr. and Mrs. St. Clair and that they disclosed the St. Clair plane to Walker in the fall of 1937. This Walker does not deny, but merely states he does not recall it.

We can ignore Stanzel 2,236,348, which has a guide for the flexible lines, since apparently Walker's "swearing back" takes Walker's patent back before the starting date of Stanzel.

It must be recalled that this particular field of the art concerning miniature planes, came into being after miniature planes were installed with motors, and after miniature planes were engaged in free flight through the use of motors. The next step, of course, was to tether the plane, causing it to fly in a circle, and inventors immediately devoted their skill to methods to cause the plane to dive and rise through controls supplied by lines. It is obvious, and certainly not invention, to know that the tether would have to be attached to, or through or near the wing tip nearest the holder of the tether line. Any school boy would know you could not attach the line alone to the tail or to the nose. There would obviously be some range of area to which the tether line could be attached, in view of the fact that the plane with a motor would have momentum which would carry it forward. However, to keep the plane from rolling over sidewards, it is obvious, and not invention, to decide that there should be a guide or lever or some device on or near the wing tip nearest the operator to give the plane lateral stability. This is what St. Clair did; this is what Walker did.

The court has explored the possibility as to whether or not some limited claims of Walker might be held good in the 2,292,416 patent and particularly Walker's claims for arranging the guide lines— one forward and one aft of the center of mass. However, the alleged infringing devices of the defendant have both guide lines aft of the center of mass and the court is inclined to believe that the guide lines on plaintiff's models purportedly made pursuant to the 2,292,416 patent, likewise have the guide lines aft of the center of mass. This was difficult to demonstrate because plaintiff's planes in evidence were not equipped with a motor and therefore were deficient in forward weight.

However, the court concludes that there is no invention in having guide lines arranged one fore and one aft of the center of mass; that in each instance the problem is one of balancing the plane and attaching the line to the plane in such a manner as to have the line not too far forward or too far to the rear, and obviously the weight of the engine and the general shape and style of the plane would be controlling factors as to where the line should pass. In any event defendant's devices have guide lines both rearwards of the center of mass and would not infringe, even if the limited claims were good.

The court finds that patent 2,292,416 is invalid because anticipated by St. Clair, and because of lack of invention over St. Clair in view of Sampson.

The 2,406,874 Patent.

This patent discloses a reel having a double spool, a common crank and a common brake for each spool. The claims call for reeling in and paying out the lines simultaneously from two spaced points sufficiently spaced to permit gripping the handle there between.

Only the defendant's Skylon reel is accused, it being stipulated that the defendant's other reel does not infringe. The prior art shows many patents which have a bearing on the problem.

Walker's 2,292,416 patent shows a handle grasped in the hand of the operator permitting the lines to be spaced and the lengths of the lines to be varied by a turn of the wrist.

Adler 1,902,983 shows a common spool for two lines with the spacing and handle.

Canney 881,772 shows a double reel for clothes lines. De Haven 1,744,529 shows the use of lines on kites and miniature

airplanes. Krulan 1,043,943 shows a reel with two spools for spooling in and paying out lines simultaneously; a common crank for operating both spools, lines emerging from the frame at spaced points. Krulan does not show a handle on the reel but such a device is well known in the art of reels. Stibbins 2,203,604 shows a kite string holder, a single reel with a spool and a handle grip for spooling out or paying in the kite line. It shows a brake. Willard 2,323,506 shows a handle grip for spacing the lines.

Going back to Adler 1,902,983, it also shows a spring-applied and thumb-released brake used in paying out the line.

The file wrapper discloses that after the claims were rejected, contention was made by the applicant that he had invented a means "by which the path of flight may be lengthened or shortened, and, also restricted to a circular path." This obviously meant that the applicant claimed he had invented a means of varying the path of flight by lengthening it or shortening it *while the plane was flying*. It is clear that no one would even contend he had an invention for *prior to flight* arranging for a longer or shorter line. The contention also means that out-of-round flight is possible by the operator, since the contention was that "flight is no longer restricted to a circular path." Thus, applicant was contending for the ability to vary the radius of the plane in flight so that the plane, instead of making a true circle, would make an elongated circle or out-of-round flight.

 It was after this contention and explanation by the applicant that the 2,406,874 patent was granted. The court concludes that the claims of the 2,406,874 patent are limited to varying the radius of the toy airplane during flight.

The court further concludes that the defendants have not infringed these limited claims. The defendants do not contend that the Skylon reel is made or intended for this purpose. They do not advertise it as being capable of this purpose. There is uncontradicted testimony that ordinary users of the Skylon reel could not or do not vary the radius during flight, and any attempt to do so repeatedly would result in damage to the reel or the plane.

The accused Skylon reel has a series of holes for threading the line back and forth through a plastic plane and such threading is not conducive to the varying of the radius of the plane in flight, but instead would at such time tend to cause the line to bind or to grip at the places where it is passed in and out of this series of holes.

On the other hand, Mr. Walker took a Skylon reel and demonstrated that he was able to use the device to vary the radius of a plane in flight using one of the plaintiff's "Fireballs." Evidence is undisputed that he is the outstanding demonstrator and operator of toy airplanes in the United States. The Skylon reel is made commercially for boys and for men with hobbies, and is not made solely for the use of one or more expert flyers. The court concludes that only an expert flyer under optimum conditions of weight of plane, speed and string size and style, would be able to reel in and out a plane with a Skylon reel during flight; and that the vast majority of users would not be able to do so. This limited use by a super expert under such conditions would not cause the Skylon reel, in connection with a use not intended, to infringe the limited claims of Walker's patent 2,406,874.

The court, if counsel desire, will consider enjoining the defendants from contending or advertising that the Skylon reel can be used to vary the radius of flight while a plane is in flight.

### Conclusion

Defendant will prepare findings of fact and conclusions of law and decree, within the time provided for by the rules of this court.